UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER VILLALVAZO MUNDO,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>    Respondents.<br>_____/ | No. C 08-2663 JL<br><br>**ORDER GRANTING RESPONDENTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br>**(Docket # 20)** |

**I. INTRODUCTION**

Petitioner Javier Villalvazo Mundo ("Petitioner"), a legal permanent resident of the United States, brought this action under section 1421(c) of title 8 of the U.S. Code against the U.S. Department of Homeland Security ("DHS") and others (collectively, "Respondents" or "the Government"), seeking review of Respondents' denial of his application for naturalization, on the ground that Respondents' unreasonable delay in processing his application should estop the Government from refusing him citizenship. Both parties thereafter consented to this Court's jurisdiction. Respondents now move for summary judgment, arguing that Petitioner's conviction for the crime of possession with intent to distribute methamphetamine renders him ineligible for naturalization by application. Having found, after carefully considering the parties' written pleadings and oral arguments and holding a hearing on Respondents' Motion for Summary Judgment, that Petitioner's

conviction precludes him from demonstrating the good moral character necessary for naturalization by application, the Court grants Respondents' Motion. Additionally recognizing that the Government's processing delay was not unreasonable, the Court denies Petitioner's request to estop the Government from refusing him citizenship.

## II. BACKGROUND

**A. Factual Background**

The parties have agreed to all of the following facts:

Petitioner, a lawful permanent resident of the United States, was arrested and charged on September 1, 2005, with having violated sections 841(a)(1) and (b)(1)(A)(viii) of title 21 of the U.S. Code, which prohibit possession with intent to distribute 500 or more grams of methamphetamine. (Joint Statement of Undisputed Facts 1:19-23.)

Thereafter, on October 19, 2005, Petitioner filed an application for naturalization. (J. Stmt. 1:24.) The U.S. Immigration and Citizenship Services ("USCIS"), a division of DHS, interviewed Petitioner on his application on March 10, 2006. (J. Stmt. 2:1-2.) At the interview, Petitioner revealed his recent arrest, and USCIS requested documentation relating thereto. (J. Stmt. 2:3-4.) In response to a request by Petitioner, USCIS extended Petitioner's deadline for providing documentation relating to his arrest. (J. Stmt. 2:5-6.)

Meanwhile, on July 17, 2006, Petitioner signed a plea agreement that the U.S. Attorney for the District of Oregon had sent to Petitioner's attorney on January 23, 2006, and filed a petition to enter a plea agreement. (J. Stmt. 2:7-8.) In the petition, Petitioner admitted that on September 1, 2005, he had unlawfully possessed with intent to distribute 500 or more grams of methamphetamine. (J. Stmt. 2:9-10.) The district judge accepted the plea agreement on July 17, 2006, and entered judgment against Petitioner on February 2, 2007. (J. Stmt. 2:11, 2:13.)

On August 2, 2007, citing Petitioner's conviction within the statutory period for an aggravated felony and a crime involving a controlled substance and moral turpitude, Respondents determined that Petitioner was ineligible for naturalization by application for

1  having failed to satisfy the requirement of good moral character. (J. Stmt. 2:17-21.) On

2  these grounds, USCIS denied Petitioner's application for naturalization. (J. Stmt. 2:14.)

3      On or about August 15, 2007, Petitioner requested a rehearing of the decision on his

4  application. (J. Stmt. 3:2-3.) Rejecting Petitioner's argument of undue delay in processing

5  his naturalization application, USCIS denied Petitioner's appeal on March 5, 2008. (J.

6  Stmt. 3:4-6.) Reiterating the original grounds for denial, USCIS informed Petitioner that

> The nature of your character was called into question do [*sic*] to your arrest prior to filing your application for naturalization. The court documents you provided show a negotiated plea agreement titled "Government Plea Letter" dated January 23, 2006. In this plea agreement you admitted guilt to possessing, with intent to sell methamphetamine. This agreement was negotiated prior to your interview on March 10, 2006. The plea agreement was filed with the court on July 17, 2006, and was received by USCIS on July 27, 2006. This documentation demonstrates you failed to establish good moral character due to your admission of violation of a US law relating to a controlled substance during the statutory period.

(J. Stmt. 3:8-14.) USCIS also reiterated that Petitioner's conviction of an aggravated felony rendered him permanently ineligible for naturalization. (J. Stmt. 3:15-16.)

**B. Procedural History**

    Petitioner sought district court review on May 28, 2008, pursuant to section 1421(c) of title 8 of the U.S. Code. (J. Stmt. 3:17; Pet. for Rev. 10:1-3.) In his Petition for Review, Petitioner claims that Respondents "willfully, and unreasonably, delayed and refused" to adjudicate Petitioner's application for naturalization, "thereby depriving the Petitioner of the benefit and privilege of US citizenship, to which he was eligible and entitled." (Pet. for Rev. 7:19-22.) Petitioner seeks to estop the Government from denying him citizenship on account of his conviction because, but for Respondents' unreasonable and unlawful delay, Petitioner's application would have been favorably adjudicated before any convictions appeared on his record. (Pet. for Rev. 9:17-21.)

    On July 31, 2008, Respondents filed a Motion to Dismiss for Improper Venue with this Court. (*See* Resp'ts' Mot. to Dismiss for Improper Venue.) This Court denied Respondents' Motion on November 13, 2008. (Order Denying Mot. to Dismiss or Transfer for Improper Venue (Docket # 5) 7:14.)

Respondents have now moved for summary judgment on the ground that Petitioner is ineligible for naturalization by application because his conviction of the crime of possession with intent to distribute methamphetamine precludes him from establishing the good moral character requirement necessary for naturalization by application. (Resp'ts' Mot. for Summ. J. 6:1-3.)

In response, Petitioner opposes summary judgment by contending that USCIS's "unreasonable delay in adjudicating his naturalization application . . . constitutes a violation of due process" that implicates "weighty constitutional" issues. (Pet'r's Opp'n to Resp'ts' Mot. for Summ. J. 6:22-24, 7:3-4.)

## III. JURISDICTION AND STANDARD OF REVIEW

**A. District Court Jurisdiction over Denials of Applications for Naturalization**

This Court has jurisdiction over Petitioner's case pursuant to section 1447(b) of title 8 of the U.S. Code. Under that section, the U.S. district court for the district in which the applicant resides may review the denial of an application for naturalization only if the applicant has exhausted his administrative appeals. 8 U.S.C. § 1447(b); *United States v. Hovsepian*, 359 F.3d 1144, 1162 n.15 (9th Cir. 2004) (interpreting § 1447(b) to mean that "[u]nsuccessful applicants must first take an administrative appeal of the denial and complete [USCIS's] administrative process before seeking judicial review"); 8 C.F.R. § 310.5. As such, an applicant whose application USCIS denies must first request a hearing before a senior immigration examiner. 8 U.S.C. § 1447(b); 8 C.F.R. § 336.2(a). Only if and when the examiner upholds the denial upon appeal may the applicant invoke the district court's jurisdiction to review the denial. 8 U.S.C. § 1421(c); *Sidhu v. Chertoff*, No. CV F 06-1536 AWI DLB, 2007 WL 1119690, at *2 (E.D. Cal. Apr. 16, 2007); 8 C.F.R. § 336.9(d).

USCIS denied Petitioner's application for naturalization, and Petitioner appealed the denial to a senior immigration examiner, who upheld the initial denial. (J. Stmt. 2:14, 3:2-4.) Having exhausted his administrative appeals, Petitioner properly invokes this Court's jurisdiction to review the denial of his application. In addition, as the Court already ruled on November 13, 2008, venue in this Court is proper. (*See* Order Denying Mot. to Dismiss

7:14.) Finally, both parties have duly consented to this Court's jurisdiction. (Pet'r's Consent to Proceed Before U.S. Magistrate Judge, June 2, 2008; Resp'ts' Consent to Proceed Before U.S. Magistrate Judge, July 31, 2008.)

**B. De Novo Review of Denials of Applications for Naturalization**

The denial of an application for naturalization is subject to *de novo* judicial review in the district court accepting jurisdiction over the matter. 8 U.S.C. § 1421(c); 8 C.F.R. § 336.9(c). If an applicant seeks judicial review, "The court may not rely on [USCIS's] findings of fact or law and, on request, must hold its own hearing on the naturalization application." *Hovsepian*, 359 F.3d at 1162. Thus, "*the district court has the final word* and does not defer to any of [USCIS's] findings or conclusions." *Id.* (emphasis in original).

However, judicial review is governed by the Administrative Procedure Act. 8 U.S.C. § 1421(c). Accordingly, "the scope of review extends only to the determination that was actually made by the agency." *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1043 (9th Cir. 2004). *But see Camara v. Chertoff*, No. C-06-7552 EMC, 2008 WL 80933, at *5 (N.D. Cal. Jan. 7, 2008) (observing that a district court, on *de novo* review of an application for naturalization, may make findings on grounds which differ from those found by USCIS).

Finally, in such a judicial proceeding on a naturalization application, the individual who is seeking to obtain the rights and privileges of U.S. citizenship bears the burden of proving by a preponderance of the evidence that he or she is eligible to become a U.S. citizen. *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967) (holding that "the burden is on the alien applicant to show his eligibility for citizenship in every respect"). Therefore, the reviewing court must resolve all doubts as to eligibility for citizenship in favor of the Government and against the applicant. *Id.* at 637.

**C. Applicable Standards to Motions for Summary Judgment**

The summary-judgment procedure serves to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc.

56(c). An issue is "genuine" only if sufficient evidence exists for a reasonable factfinder to find for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248.

Pursuant to this standard, a party moving for summary judgment who will not bear the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Therefore, the court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. However, summary judgment is not proper if genuine issues of material fact exist for trial. *Liberty Lobby*, 477 U.S. at 248 (1986); *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 610 (9th Cir. 2003).

In considering a motion for summary judgment, "the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 734 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).

## IV. DISCUSSION

Petitioner claims that Respondents "willfully, and unreasonably, delayed and refused" to adjudicate Petitioner's application for naturalization, "thereby depriving the Petitioner of the benefit and privilege of US citizenship, to which he was eligible and entitled." (Pet. for Rev. 7:19-22.) Respondents have requested that this Court grant summary judgment in their favor, claiming that Petitioner is ineligible for naturalization by application because he fails to establish good moral character on three distinct grounds: Petitioner was 1) convicted of or admitted to a crime of moral turpitude during the requisite statutory period, 2) convicted of or admitted to a qualifying crime involving a controlled

substance during the requisite statutory period, and 3) convicted of an aggravated felony on or after November 29, 1990.  (Resp'ts' Mot. for Summ. J. 6:1-3, 6:19-28, 7:1-3.)

The parties do not dispute that Petitioner is a lawful permanent resident who has reached the age of eighteen, resided continuously in the United States for a period of five years immediately prior to filing his application for citizenship, demonstrates knowledge of the English language and U.S. history and government, and is not otherwise categorically barred.  In addition, neither party disputes that Petitioner was subject to the good-moral-character requirement in applying for naturalization.  Nor do the parties dispute that Petitioner was convicted of possession with intent to distribute 500 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii).  (J. Stmt. 2:9-10.)

Therefore, the only two issues before the Court are 1) whether Petitioner's conviction of a crime of possession of narcotics renders Petitioner ineligible for naturalization by application by precluding a finding of good moral character for the purpose of admission to citizenship, and 2) whether Respondents acted properly in delaying the processing of Petitioner's application for naturalization, pending the outcome of the ongoing criminal proceedings against Petitioner.

The Court answers both questions in the affirmative.  First, the Court finds that Petitioner is ineligible for naturalization by application because he fails to establish good moral character on three distinct grounds: Petitioner, during the requisite statutory period, was 1) convicted of or admitted to a crime of moral turpitude, 2) convicted of or admitted to a qualifying crime involving a controlled substance, and 3) convicted of an aggravated felony on or after November 29, 1990.  Second, the Court finds that Respondents acted properly in delaying the processing of Petitioner's application, pending the outcome of the ongoing criminal proceedings against Petitioner.  Therefore, Respondents' Motion for Summary Judgment shall be GRANTED since no issue of material fact is in dispute and Respondents are entitled to judgment as a matter of law.

**A. Petitioner's Commission or Conviction of Narcotics Possession During the Requisite Statutory Period for Naturalization Precludes a Finding of Good Moral Character and Thus Renders Petitioner Ineligible for Naturalization.**

As stated above, Respondents move for summary judgment on the ground that Petitioner is ineligible for naturalization by application because he fails to establish good moral character, as required for admission to citizenship.

*1. Legal Standards Governing Eligibility for Naturalization by Application*

Congress has the constitutional power to "establish a uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. In the exercise of such power, Congress enacted the Immigration and Nationality Act (INA). *See* 8 U.S.C. *et seq.*

Under the INA, an applicant for naturalization generally must 1) be a lawful permanent resident; 2) have reached the age of eighteen; 3) satisfy the various continuous residence and physical presence requirements set forth in the INA; 4) demonstrate knowledge of the English language and U.S. history and government; 5) possess good moral character for the entire statutory period; and 6) not be otherwise categorically barred.[1] 8 U.S.C. §§ 1423(a), 1427(a)-(d), 1429, 1445(b); 8 C.F.R. §§ 312.1, 312.2, 316.2, 316.5, 316.10, 316.11.

A person must possess good moral character "during all the periods referred to" in section 1427(a) of title 8 of the U.S. Code. 8 U.S.C. § 1427(a)(3). *See also* 8 C.F.R. § 316.10(a)(1). These periods include both 1) the five years "immediately preceding the date of filing" the application and 2) the period "from the date of the application up to the time of admission to citizenship." 8 U.S.C. § 1427(a)(1)-(2). *See also* 8 C.F.R. § 316.10(a)(1). Admission to citizenship occurs when the applicant takes the oath of allegiance to becomes a U.S. citizen. 8 U.S.C. § 1448(a); 8 C.F.R. §§ 337.1(a), (c).

No precise definition exists as to what constitutes good moral character. *See* 8 C.F.R. § 316.10 (defining "good moral character" by negation). *See also Application of Murra*, 178 F.2d 670, 677 (7th Cir. 1949) (observing that "what constitutes 'good moral

---

[1] An applicant is categorically barred from naturalizing if the applicant is a subversive, member of the Communist Party, deserter during wartime, or a person against whom removal proceedings are pending or who has been ordered deported. 8 U.S.C. §§ 1424-27(f), 1424(a), 1425, 1429.

character' . . . cannot be determined in any precise fashion"). However, the INA statutorily bars an applicant from establishing good moral character if, during the requisite period, the applicant either 1) was convicted of or admitted to a crime of moral turpitude, 2) was convicted of or admitted to a qualifying crime involving a controlled substance during the requisite period, or 3) was convicted of an aggravated felony on or after November 29, 1990. 8 U.S.C. §§ 1101(f)(3), (8); *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 851 (9th Cir. 2006); 8 C.F.R. §§ 316.10(b)(2)(i), (iii).

Therefore, in determining whether Petitioner has demonstrated good moral character during the requisite statutory period, the court must consider 1) whether the Government properly characterized the act for which Petitioner was convicted as a crime involving a controlled substance, a crime involving moral turpitude, or an aggravated felony; and 2) whether Petitioner was convicted for that act during the requisite statutory period.

### *2. Analysis of Petitioner's Eligibility for Naturalization by Application*

In terms of whether the Government properly characterized the act for which Petitioner was convicted, Petitioner was indeed convicted of a crime involving a controlled substance, a crime involving moral turpitude, and an aggravated felony.

First, possession of a controlled substance for sale is a federal criminal offense. 21 U.S.C. § 841(a)(1). Methamphetamine is classified as a controlled substance under the Controlled Substances Act. 21 U.S.C. § 802(6) (defining a controlled substance as "a drug or other substance . . . included in schedule I, II, III, IV, or V); 21 U.S.C. § 812(III)(a)(3) (listing methamphetamines as a Schedule III substance). Therefore, possession of methamphetamine for sale is a crime involving a controlled substance. Because Petitioner was convicted of possession with intent to distribute 500 or more grams of methamphetamine in violation of sections 841(a)(1) and (b)(1)(A)(viii) of title 21 of the U.S. Code, he was convicted of a crime involving a controlled substance.

Second, a crime involving moral turpitude is an "'act of baseness or depravity contrary to accepted moral standards.'" *Marmolejo-Campos v. Gonzales*, 503 F.3d 922, 925 (9th Cir. 2007) (quoting *Guerrero de Nodahl v. INS*, 407 F.2d 1405, 1406 (9th Cir. 1969)), *reh'g en banc*, 519 F.3d 907 (2008). Narcotics trafficking, "including possession of

unlawful substances for sale, generally involve[s] moral turpitude." *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903-04 (9th Cir. 2007) (citing *Atl. Richfield Co. v. Guerami*, 820 F.2d 280, 282 (9th Cir. 1987)). Because Petitioner was convicted of possessing an unlawful substance for sale, he was convicted of a crime involving moral turpitude.

Third, possession with intent to sell any controlled substance is also an aggravated felony. 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" as including "illicit trafficking in a controlled substance"); *Haroutunian v. INS*, 87 F.3d 374, 375 n.2 (9th Cir. 1996) (finding that "[a]n aggravated felony may be any felony punishable under the Controlled Substances Act"). If an alien at any time in his life has been convicted of an aggravated felony, he is permanently and absolutely barred from a finding of good moral character for the purpose of naturalization. 8 U.S.C. § 1101(f)(8); *Castiglia v. INS*, 108 F.3d 1101, 1103 (9th Cir. 1997) (interpreting § 1101(f)(8)). Because Petitioner was convicted of possession with intent to sell a controlled substance, he is an alien who has been convicted of an aggravated felony.

As for whether Petitioner's conviction occurred within the requisite statutory period, Petitioner labors under the misapprehension that "once he successfully passed his English and Civics examination," he was entitled to citizenship because "he had not been convicted of any criminal conduct and possessed the requisite moral character to naturalize given the fundamental right to the presumption of innocence which follows from the 5th, 6th and 14th amendments." (Pet'r's Opp'n 5:25-28.) While Petitioner's constitutional claim hardly merits a response, the Court need only note briefly that the presumption of innocence, as a device for allocating the burden of proof in criminal trials, does not apply to immigration proceedings, which are civil in nature. *See Bell v. Wolfish*, 441 U.S. 520, 533 (1979) ("The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials . . . ."); *Berenyi*, 385 U.S. at 637 ("[W]hen an alien seeks to obtain the privileges and benefits of citizenship . . ., the burden is on the alien applicant to show his eligibility for citizenship in every respect."). *See also United States v. Zucca*, 351 U.S. 91, 104 (1956) ("[D]enaturalization is only a civil proceeding . . . ."); *Klapprott v. United States*, 335 U.S.

601, 625 (1949) (Reed, J., dissenting) ("[T]he protections inherent in [a] criminal proceeding are not intended to apply to the civil proceeding [of denaturalization] . . . .").[2]

Notwithstanding this point, Petitioner disregards the fact that the conditions of naturalization required him to maintain good moral character for the entire period of time extending from the five years immediately preceding the filing of his application up until he was to take the oath of citizenship.  Indisputably, Petitioner was convicted of his crime after the date of filing but before final adjudication of his application.  Therefore, Petitioner's conviction, having been entered before the administering of any oath of allegiance or Petitioner's admission to citizenship, occurred squarely within the requisite statutory period.

In sum, as an applicant for naturalization who has been convicted of a crime involving a controlled substance, a crime involving moral turpitude, and an aggravated felony during the requisite statutory period, Petitioner is unable to establish good moral character and is thus statutorily ineligible for naturalization.  Petitioner has offered no evidence to refute these findings of fact.  Given that Respondents are entitled to judgment as a matter of law, this Court grants Respondents' Motion for Summary Judgment.

**B. Respondents Acted Properly in Delaying the Processing of Petitioner's Application for Naturalization, Pending the Outcome of the Ongoing Criminal Proceedings.**

Petitioner contends that Respondents "willfully, and unreasonably, delayed and refused" to adjudicate Petitioner's application for naturalization pending the outcome of the criminal proceedings against Petitioner, "thereby depriving the Petitioner of the benefit and privilege of US citizenship, to which he was eligible and entitled."  (Pet. for Rev. 7:19-22.) Petitioner argues that, "But for the Government's unreasonable delay . . ., Petitioner would not have been deemed ineligible to naturalize and therefore . . . he must be duly naturalized in the interests of justice and fair play."  (Pet. for Rev. 9:17-21.)  Essentially, Petitioner requests, though not in so many words, that this Court equitably estop the

---

[2] *Coffin v. United States*, 156 U.S. 432 (1895), and *Deck v. Missouri*, 544 U.S. 622 (2005), being the only two cases that Petitioner cites on this point, are inapposite here, as both deal with criminal proceedings and neither involve immigration matters.  Besides, *Coffin* appears to have been subsequently abrogated.  *See United States v. Ely*, 142 F.3d 1113, 1119 (9th Cir. 1997) (recognizing abrogation on the grounds that "[t]he century-old case . . . has become obsolete even if it has not received its own burial and coffin").

1  Government from enforcing the immigration laws in denying his application, in view of the
2  Government's processing delay.
3      Recognizing that Respondents have already met their burden in proving that
4  Petitioner is statutorily ineligible for naturalization, the Court notes that Petitioner's request
5  for a judicial determination of whether USCIS unreasonably delayed is a moot point.  *See*
6  *Sze v. INS*, 153 F.3d 1005, 1010 (9th Cir. 1998) (holding that INS's prior adjudication of an
7  application for naturalization mooted a petition requesting mandamus relief due to
8  unreasonable processing delay).  The Court, nevertheless, will address Petitioner's
9  arguments in order to dispose of the issue.
10 ***1. Legal Standards Applicable to Processing Naturalization Applications***
11     Applying for naturalization involves a four-step process starting with the filing of an
12 application and proceeding to the background investigation and interview of the applicant
13 and, finally, the administration of the oath of allegiance.  *See* 8 U.S.C. §§ 1445(a), 1446(a),
14 1446(d), 1448(a); 8 C.F.R. §§ 316.4, 334.2(a), 335.1-.3.
15     Under the APA, USCIS owes a mandatory, non-discretionary obligation to applicants
16 to adjudicate their applications for naturalization within a reasonable time period.  *See* 8
17 U.S.C. § 1446(d) (providing that USCIS "*shall* make a determination as to whether the
18 application should be granted or denied") (emphasis added); *Chou v. Melville*, No. 08-1740
19 SC, 2009 WL 29903, at *2 (N.D. Cal. Jan. 5, 2009); *Sonjei v. Dep't of Homeland Sec.*, 525
20 F. Supp. 2d 1151, 1156 (N.D. Cal. 2007).  Pursuant to the APA, "each agency shall
21 proceed to conclude a matter presented to it" within a reasonable time.  5 U.S.C. § 555(b).
22 If USCIS delays beyond 120 days in adjudicating an application after the applicant has
23 been interviewed, the applicant may apply to the United States district court for the district
24 in which the applicant resides for a hearing on the matter.  The district court has jurisdiction
25 over the case and may either decide or remand the case.  8 U.S.C. § 1447(b); *Hovsepian*,
26 359 F.3d at 1159 (finding that the reviewing court's jurisdiction is exclusive); 8 C.F.R. §
27 310.5(a).  In reviewing an agency's delay, the district court shall "compel agency action
28 unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

However, nothing in the INA mandates that USCIS make a decision within 120 days of the initial interview.[3] Rather, when USCIS fails to do so, the INA "merely affords a naturalization applicant [with] recourse to the courts . . . ." *Sze v. INS*, No. C-97-0569 SC, 1997 WL 446236, at *5 (N.D. Cal. July 24, 1997), *appeal dis'd*, 153 F.3d 1005 (9th Cir. 1998). *Accord Du v. Chertoff*, 559 F. Supp. 2d 1049, 1054 (N.D. Cal. 2008) (finding that USCIS does not have a mandatory duty to take action on an application for naturalization until the FBI has completed its background checks); *Ibrhimi v. Still*, No. C06-5968 MJJ, 2007 WL 841790, at *4 (N.D. Cal. Mar. 20, 2007) (holding that "[s]ection 1447(b) merely provides a district court with jurisdiction to determine the matter or remand the matter back to USCIS"). As such, mere processing delay cannot estop the Government from enforcing the immigration laws. *See INS v. Miranda*, 459 U.S. 14, 19 (1982) (per curiam) (holding that "[p]roof only that the Government failed to process promptly an application" is insufficient "to estop the Government from enforcing the immigration laws"); *Santamaria-Ames v. INS*, 104 F.3d 1127, 1133 (9th Cir. 1996) (holding that estoppel is appropriate only when the Government has committed "affirmative misconduct").

Legitimate public interest in effective law enforcement justifies deferring adjudication of applications for naturalization, pending criminal proceedings. One primary concern is that the outcome of a criminal action "could be dispositive on the issue of [an applicant's] eligibility for naturalization." *Souza v. Schiltgen*, No. C-95-3997 MHP, 1996 WL 241824, at *4 (N.D. Cal. May 6, 1996). As a corollary, "the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship" because citizenship, "once granted, cannot be lightly taken away." *Berenyi*, 385 U.S. at 637. *Accord Souza*,

---

[3] The only authority that Petitioner invokes in support of his argument that USCIS bears an obligation to adjudicate naturalization applications within a given timeframe is *Miller v. INS*, Civ. No. 7:01-cv-00178 (W.D. Va. 2001), an unpublished case from the U.S. District Court for the Western District of Virginia, in which the court ordered the Government to adjudicate the plaintiff's naturalization application. *See* Order Remanding Action to INS (Docket #9), *Miller*, Civ. No. 7:01-cv-00178 (W.D. Va. May 18, 2001). Because this case possesses no precedential value in our circuit or district, this Court declines to take judicial notice of Petitioner's purported authority. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (observing that circuit law binds courts only within that particular circuit); *State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 636 (N.D. Cal. 1997) (finding that "unpublished opinions have 'no precedential value and cannot be cited' in the Ninth Circuit") (quoting *Laser Indus., Ltd. v. Reliant Techs., Inc.*, 167 F.R.D. 417, 425 n.12 (9th Cir. 1996)).

1996 WL 241824, at *4 (observing that "[u]nnecessary litigation would ensue if the government is required to seek denaturalization" following a recently naturalized citizen's conviction for charges that were pending during the application-processing period).

### *2. Analysis of Delay in Petitioner's Case*

Here, Petitioner filed his naturalization application with USCIS on October 19, 2005. (J. Stmt. 1:24.) Petitioner interviewed with a USCIS examiner and passed his proficiency tests on March 10, 2006, but USCIS withheld a final decision on Petitioner's application, pending the outcome of ongoing criminal proceedings against Petitioner for illegal activities dating back to September 1, 2005. (*See* Pet. for Rev. 4:27-28; J. Stmt. *passim*.) The issue that Petitioner presents is whether the Government's delay in adjudicating his application for naturalization may estop the Government from denying him citizenship.

In arguing that a grant of citizenship "must be delivered in writing" within 120 days of the examination, Petitioner fails to appreciate that mere completion of the proficiency tests and expiration of the 120-day period do not automatically entitle him to citizenship. (*See* Pet. for Rev. 7:2-5.) Contrary to Petitioner's contention that the Government's denial of his application involves "weighty constitutional" issues, the only issue of constitutional magnitude here is the Government's interest in ensuring that unqualified persons are not granted citizenship. (*See* Pet'r's Opp'n 7:3-4.) Indeed, the Government had no obligation to admit Petitioner to citizenship while he was under criminal indictment, and any decision by USCIS on Petitioner's application while criminal proceedings were pending would have been improper. As explained above, the charge that Petitioner faced related to criminal activity occurring on or around September 1, 2005 – squarely within the five-year statutory period immediately prior to when Petitioner filed his application and during which he was required to maintain good moral character. *See* discussion *supra* part IV.A.2. In other words, the pending criminal investigation cast doubt on whether Petitioner would satisfy the condition of good moral character. Congress expressly provided that "[t]here is no 'right to naturalization unless all statutory requirements are complied with.'" *Baumgartner v. United States*, 322 U.S. 665, 672 (1944) (quoting *United States v. Ginsberg*, 243 U.S. 472, 475 (1917)). Because Petitioner's failure to fulfil all of the statutory requirements for

naturalization precluded him from receiving the benefits of citizenship, USCIS properly delayed processing his application.

Besides, Petitioner failed to seek review by this court of USCIS's delay beyond the 120-day period. Following Petitioner's interview on March 10, 2006, USCIS neglected to adjudicate Petitioner's application until August 2, 2007. (J. Stmt. 2:1-14.) After more than 120 days had elapsed, Petitioner accrued a right to seek judicial review. *See* 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5(a). Instead, Petitioner chose to waive this statutory right. To be sure, Petitioner even requested a processing extension in order to provide documentation relating to his arrest. (J. Stmt. 2:5-6.) Even the most favorable reading of these facts fails to indicate any arguably reprehensible reason for USCIS's delay.

Given that the "only indication of negligence is the length of time" that USCIS took to process Petitioner's application, the Court "cannot say in the absence of evidence to the contrary that the delay was unwarranted." *Miranda*, 459 U.S. at 18. Therefore, this Court denies Petitioner's request to estop the Government from refusing him citizenship.

## V. CONCLUSION

Respondents' Motion for Summary Judgment is hereby granted, and Petitioner's Petition for Review is denied with prejudice.

DATED: February 27, 2009

_____
James Larson
Chief Magistrate Judge